IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

CHRISTOPHER MARK AYERS,
Administrator of the Estate of
Gabrielle Brooke Ayers,

               Plaintiff,

v.

DREWRY WOODSON HALL,
WILLIAM RENTZ BRANDT, RICHARD
WAYNE HALL, and SALLIE
WOODSON HALL,

               Defendants.

Civil Action No.: 4:18CV00020-JLK

## PLAINTIFF'S RESPONSE TO DEFENDANTS DREWRY WOODSON HALL AND RICHARD WAYNE HALL'S MOTION TO DISMISS THE AMENDED COMPLAINT PURSUANT TO RULE 12(b)(1)

COMES NOW the Plaintiff, Christopher Mark Ayers ("Plaintiff"), Administrator of the Estate ("Estate") of Gabrielle Brooke Ayers ("Ms. Ayers"), by counsel, and respectfully submits this Response to Defendants Drewry Woodson Hall and Richard Wayne Hall's (collectively, the "Hall Defendants'") Motion to Dismiss the Amended Complaint Pursuant to Rule 12(b)(1) ("Motion"). In their Motion, the Hall Defendants argue that, because Plaintiff had not yet qualified as the administrator of the Estate of Ms. Ayers in Virginia at the time he filed the initial Complaint in this action, he lacked standing and this action is a nullity that cannot be cured by Plaintiff's later filing of an Amended Complaint alleging that he had subsequently qualified as the administrator of the Estate in Virginia. Notwithstanding the Hall Defendants' terminology, however, the present Motion raises an issue of capacity, not standing.

Pursuant to governing federal law, as delineated by both this Court and numerous courts from other jurisdictions, the Hall Defendants waived any argument concerning Plaintiff's purported lack of capacity by failing to raise it in their Answers. Moreover, even if the Court addresses the merits of the Motion, case law from this Court (which the Hall Defendants fail to cite) and other federal jurisdictions overwhelmingly authorizes a plaintiff to amend his or her complaint in order to cure a lack of capacity in situations nearly identical to this one. Therefore, the Hall Defendants' Motion must be denied.

## Statement of Facts

The present suit is a wrongful death action brought by Plaintiff as the duly-appointed Administrator of the Estate of his daughter, Ms. Ayers. Ms. Ayers died on July 3, 2016, as a result of a collision on Smith Mountain Lake between a power boat being operated by Defendant Drewry Woodson Hall ("Hall"), and a jet ski being operated by Defendant William Rentz Brandt ("Brandt"), on which Ms. Ayers was a passenger. (Am. Compl. (Doc. 15) ¶¶ 9-10.) Plaintiff filed his original Complaint on April 13, 2018. (Doc. 1.) At the time of this filing, Plaintiff had qualified as the administrator of Ms. Ayers' estate in North Carolina, but not in Virginia. Plaintiff quickly realized this omission and on May 21, 2018, qualified as the administrator of Ms. Ayers' Estate in Pittsylvania County, Virginia. (Am. Compl. ¶ 4 & Ex. A.) On May 23, 2018, Plaintiff filed an Amended Complaint as a matter of course pursuant to Federal Rule of Civil Procedure 15(a)(1). (Doc. 15.) The Amended Complaint alleges a claim for negligence against Hall and Brandt (*id.* ¶¶ 11-20), a claim for negligent entrustment against

Defendants Richard Wayne Hall ("Mr. Hall") and Sallie Woodson Hall (*id.* ¶¶ 21-27),[1] and a claim of willful and wanton conduct – punitive damages against Hall (*id.* ¶¶ 28-31).

On June 11, 2018, Hall filed his Responsive Pleading to the Amended Complaint. (Doc. 29.) Nowhere in the Responsive Pleading did Hall contend that Plaintiff lacked the capacity to bring this action. On July 12, 2018, Mr. Hall filed his Answer to the Amended Complaint. (Doc. 48.) Nowhere in the Answer did Mr. Hall contend that Plaintiff lacked the capacity to bring this action. On October 9, 2018, Brandt filed his Second Rule 12(b)(1) Motion to Dismiss for Lack of Subject Matter Jurisdiction (Doc. 59), challenging Plaintiff's standing to bring this action.[2] On November 6, 2018, the Hall Defendants filed the present Motion (Doc. 66), raising nearly verbatim the same arguments as in Brandt's Second Motion.

## Legal Standard

Where a defendant contends that the complaint fails to allege sufficient facts upon which subject matter jurisdiction can be based, "all the facts alleged in the complaint are assumed to be true and the plaintiff, in effect, is afforded the same procedural protection as he would receive under a Rule 12(b)(6) consideration." *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). Plaintiff, as the party asserting subject matter jurisdiction, has the burden of proving it exists. *Robb Evans & Assocs., LLC v. Holibaugh*, 609 F.3d 359, 362 (4th Cir. 2010).

---

[1] Richard Wayne Hall is the father of Drewry Woodson Hall. Sallie Woodson Hall was the mother of Drewry Woodson Hall and the wife of Richard Wayne Hall. Mrs. Hall passed away on October 14, 2018.

[2] Brandt's original Rule 12(b)(1) Motion to Dismiss for Lack of Subject Matter Jurisdiction (Doc. 26) asserted a lack of diversity jurisdiction.

**Argument**

The Hall Defendants' Motion fundamentally misconstrues the matter at hand. The Hall Defendants are in fact complaining about Plaintiff's purported lack of capacity rather than lack of standing. Moreover, pursuant to *Hanna v. Plumer*, 380 U.S. 460 (1965), and *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938), this matter must be determined under federal law, rendering inapposite the Virginia state court cases cited by the Hall Defendants in their Brief. An examination of applicable federal law reveals that not only have the Hall Defendants waived their argument concerning Plaintiff's purported lack of capacity by failing to raise it in their Answers, but numerous courts across the country have allowed complaints to be amended to cure lack of capacity, including this Court in a case directly on point but not cited by the Hall Defendants in their brief. Accordingly, the Hall Defendants' Motion must be denied.

**I. Notwithstanding the Terminology Used in the Hall Defendants' Motion and Brief, the Hall Defendants Are In Reality Challenging Plaintiff's Purported Lack of Capacity Rather Than Lack of Standing.**

In their Motion, the Hall Defendants contend that Plaintiff "did not have standing" when he filed his original Complaint prior to qualifying as administrator of Ms. Ayers' Estate in Virginia, thus rendering the action a nullity and requiring its dismissal. (Defs. Drewry Woodson Hall & Richard Wayne Hall's Br. in Supp. of Mot. to Dismiss Am. Compl. Pursuant to Rule 12(b)(1) (Doc. 67) at 4 [hereinafter "Hall Defs.' Br."].) However, the Hall Defendants have confused the issue of standing with the issue of capacity. To have standing, "the plaintiff must have suffered an 'injury in fact' that is 'fairly traceable to the challenged action of the defendant' and 'it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.'" *Fletcher v. City of New London*, No. 3:16-cv-241 (MPS), 2017 WL 690533, at *3 (D. Conn. Feb. 21, 2017) (quoting *Lujan v. Defenders of Wildlife*, 504

U.S. 555, 560-61 (1992)). On the other hand, capacity "involves a party's personal right to litigate in federal court." *Id.* "'[O]nly a person who possesses the right to enforce a claim and who has a significant interest in the litigation'"—a "real party in interest" under Federal Rule of Civil Procedure 17(a)—can bring a claim in federal court. *Id.* (citation omitted). Thus, "[t]here is a difference between capacity to sue and standing to sue. The former relates to the right to come into court, while the latter relates to the right to relief." *Citizens Concerned for Separation of Church & State v. City & Cnty. of Denver*, 628 F.2d 1289, 1300 (10th Cir. 1980).

Unfortunately, "'[s]tanding frequently has been identified by both justices and commentators as one of the most confused areas of the law.'" *Estate of Rowell v. Walker Baptist Med. Ctr.*, No. 5:11-CV-3439-RRA, 2012 WL 2479626, at *3 (N.D. Ala. June 25, 2012) (quoting Erwin Chemerinsky, *Federal Jurisdiction* § 2:3, at 57 (5th ed. 2007)). Both attorneys and courts "[f]requently . . . confuse the concepts of standing with that of capacity to sue and with the real party in interest principle." *Firestone v. Galbreath*, 976 F.2d 279, 283 (6th Cir. 1992); *see also Fed. Deposit Ins. Corp. v. Bachman*, 894 F.2d 1233, 1235 (9th Cir. 1990) (loose use of standing "leads to much confusion when it is necessary to distinguish between 'standing' in its most technical sense and the concept of real party in interest under Fed.R.Civ.P. 17(a)."); *In re Tylenol (Acetaminophen) Mktg., Sales Practices & Prods. Liab. Litig.*, No. 2:12-cv-07263, 2015 WL 7075812, at *4 n.26 (E.D. Pa. Nov. 13, 2015) ("Standing and capacity to sue are two different concepts, often confused by lawyers and courts."). Referring to real-party-in-interest issues as standing issues, "tempts courts to apply standing principles outside the context in which they were developed." *Bachman*, 894 F.2d at 1236. Although these cases might refer to the issue as one of standing, "properly considered, these cases implicate the principle of the real party in interest under Fed.R.Civ.P. 17(a)." *Id.*

5

Numerous federal courts have relied on the above principles in finding that "objections to the substitution of the person appointed as special administrator of an estate raise questions of capacity rather than standing." *Hoskinson v. High Gear Repair, Inc.*, No. 11-1190-JTM-DJW, 2013 WL 4028804, at *5 (D. Kan. Aug. 7, 2013). This is because "[w]hether plaintiffs can sue on behalf of an estate is a question of 'right to litigate in a federal court,' not a question of 'right to relief' based on whether an injury-in-fact exists." *Hill v. Martinez*, 87 F. Supp. 2d 1115, 1122 (D. Colo. 2000). Furthermore, "the judicial determination of who should represent the estate turns not on who has suffered an injury from actions taken against the decedent, but rather on who can best carry out the duties, fiduciary and otherwise, imposed by the appointment." *Id.*

For example, in *Estate of Manuel ex rel. Skaggs-Manuel v. Schroetlin*, No. 17-cv-01633-NYW, 2018 WL 1427209 (D. Colo. Mar. 22, 2018), defendants moved to dismiss a wrongful death claim based on lack of standing where no estate existed at the time the complaint was filed. *Id.* at *2. Although plaintiff later qualified as personal representative of the estate, defendants insisted that this was still insufficient to confer standing. *Id.* at *3. The court, however, concluded that while defendants' arguments were "couched in terms of standing," *id.*, plaintiff's "ability to sue on behalf of the Estate concerns her capacity to sue under Rule 17(b), not her standing." *Id.* at *4. Plaintiff's representation in her original complaint that she was the personal representative of the estate might have been untrue at the time, but "it does not follow that the *Estate* lacks standing to sue." *Id.* at *5 (emphasis in original). The estate suffered an injury-in-fact upon decedent's death, regardless of when it was formally established, and whether plaintiff had the capacity to bring suit on behalf of the estate did not implicate issues of subject matter jurisdiction. *Id.* Thus, defendants' motion to dismiss was denied. *Id.* at *6.

6

Similarly, in *Hoskinson*, after being appointed special administrator of her deceased husband's estate, plaintiff filed a motion to amend her previously-filed complaint to change the capacity in which she was bringing suit. 2013 WL 4028804, at *3. Defendant contended that the court lacked subject matter jurisdiction to even consider the motion because plaintiff lacked standing at the time she filed her original complaint. *Id.* However, "[w]hile Defendant attempts to frame the issue in terms of Plaintiff lacking Constitutional Article III standing," the court held that "the standing issue is more appropriately addressed as a question of legal capacity rather than constitutional standing." *Id.* at *5. Accordingly, the court had subject matter jurisdiction over the action as a whole, as well as plaintiff's motion. *Id.*; *see also Firestone*, 976 F.2d at 283 ("The question is whether these plaintiffs can sue on behalf of the Estate. This would seem to be a question of capacity rather than standing or real party in interest."); *Morris v. Trust Co. of Va.*, Nos. 2:12-CV-1020-WKW, 2:13-CV-930-WKW, 2015 WL 1475487, at *12 (M.D. Ala. Mar. 31, 2015) (explaining that an executor's ability to sue is one of "capacity," not standing); *Hill*, 87 F. Supp. 2d at 1122 (holding that "whether individuals can sue on behalf of an Estate is best characterized as a question of capacity").

Here, the Estate undeniably has standing. It is seeking redress in the form of money damages for the death of Ms. Ayers, an "injury-in-fact" that is "fairly traceable" to the negligent actions of Defendants. *See Fletcher*, 2017 WL 690533, at *6; *Slagowski v. Cent. Wash. Asphalt, Inc.*, No. 2:11-CV-00142-APG-VCF, 2014 WL 4887807, at *3 (D. Nev. Sept. 30, 2014). However, the Hall Defendants are challenging whether Plaintiff has the right to sue on behalf of the Estate when the Estate was opened in Virginia subsequent to the filing of the initial Complaint. As set forth above, this is an issue of capacity to sue, not standing.

The Hall Defendants rely heavily on *Yates v. Turcotte*, No. 7:14-CV-00144, 2014 WL 7045619 (W.D. Va. Dec. 12, 2014). (Hall Defs.' Br. at 3-4.) *Yates*, like the Hall Defendants in their Brief (*id.* at 3), cites Rule 17(b)(3), which deals with capacity, but then proceeds to incorrectly analyze the issue as one of standing. 2014 WL 7045619, at *2. *Yates* is one of the numerous cases that "address the question of whether an individual can sue on behalf of an estate only within the context of standing." *Hill*, 87 F. Supp. 2d at 1122. However, "[t]hese cases are marked by imprecision for their failure to distinguish standing from capacity to sue . . . [and] lack persuasive value." *Id.* at 1123. Like the Hall Defendants, *Yates* focuses its analysis on the wrong issue, and therefore it is not controlling.

In sum, while the Hall Defendants couch this Motion in terms of "standing," they are in reality challenging Plaintiff's ability to represent the Estate and this is an issue of capacity. The question then becomes whether Plaintiff's subsequent qualification as administrator of the Estate in Virginia, and amendment of the Complaint to reflect this, cures his original lack of capacity. First, however, it must be determined whether this issue should be decided pursuant to federal or state law.

## II.     Federal Law Governs the Issue of Whether a Subsequent Amendment Can Cure an Initial Lack of Capacity, Even If Such an Amendment Would Be Impermissible Under State Law.

Capacity to sue is typically determined by the law of the state in which a federal court sits. Fed. R. Civ. P. 17(b)(3). In this case, that would be Virginia. *See Schieszler v. Ferrum Coll.*, 236 F. Supp. 2d 602, 613 (W.D. Va. 2002). However, while Virginia law governs who the real party in interest might be upon the creation of the Estate, it does not answer the question of whether Virginia or federal law governs the process of substituting a real party of interest for a party who lacks capacity. As set forth below, federal law controls this analysis.

8

*See Kuelbs v. Hill*, 615 F.3d 1037, 1041 (8th Cir. 2010) ("Although Arkansas law governed who the real party in interest became after Kuelbs was declared incompetent, federal law governs the substitution procedure the district court followed.").

## A. Because the Applicable Federal Rule Directly Conflicts With the Virginia Rule, Federal Law Controls.

Historically, *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938), requires a federal court sitting in diversity to apply the substantive law of the forum state. *Tylenol*, 2015 WL 7075812, at *5. However, in *Hanna v. Plumer*, 380 U.S. 460 (1965), the Supreme Court held that in diversity cases where federal and state rules of procedure are in conflict, the federal rule controls and an *Erie* analysis is unnecessary. *Tylenol*, 2015 WL 7075812, at *5. Accordingly,

> When a situation is covered by one of the Federal Rules, the question facing the court is a far cry from the typical, relatively unguided Erie Choice: the court has been instructed to apply the Federal Rule, and can refuse to do so *only if* the Advisory Committee, this Court, and Congress erred in their prima facie judgment that the Rule in question transgresses neither the terms of the Enabling Act nor constitutional restrictions.

*Id.* at *6 (quoting *Hanna*, 380 U.S. at 471) (emphasis in original). Application of the Federal Rules is warranted, "even when the outcome would be different under state rules, given the judiciary's 'strong inherent power' to 'bring about uniformity in the federal courts.'" *Id.* (quoting *Hanna*, 380 U.S. at 472-73).

As established in Section I above, because this Motion involves an issue of capacity rather than standing, the applicable rule is Federal Rule of Civil Procedure 17. Rule 17(a) provides that "[a]n action must be prosecuted in the name of the real party in interest." Fed. R. Civ. P. 17(a)(1). A real party in interest includes an executor or administrator of an estate. *Id.* Most importantly for purposes of the present Motion,

The court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action. After ratification, joinder, or substitution, the action proceeds as if it had been originally commenced by the real party in interest.

Fed. R. Civ. P. 17(a)(3).

Several federal courts have applied Federal Rule of Civil Procedure 17(a) in cases of conflict with state law. For instance, *Tylenol* involved a wrongful death claim brought under Alabama law. 2015 WL 7075812, at *1. Plaintiff had not been appointed personal representative of the estate at the time she filed her original complaint, but filed a new complaint after her appointment, which she sought to "relate back" to her original complaint. *Id.* at *4. Defendants argued that because plaintiff had not been appointed personal representative at the time of the original complaint, her action was a "nullity." *Id.* Plaintiff countered that her filing of the new complaint after being formally appointed as personal representative ratified the wrongful death claim pursuant to Rule 17(a)(3). *Id.* at *5. The court had to determine if state or federal law controlled whether plaintiff could proceed with her case. *Id.* at *4.

The court first found that Rule 17(a)(3) was sufficiently broad to cover the substitution issue. *Id.* at *9. Pursuant to the Advisory Committee Notes, "the Rule is intended to conform with the modern developments of law which have allowed amendment when there has been an 'honest mistake' in the filing of an action." *Id.* The rule directly conflicted with Alabama's interpretation of its relevant state rule to hold that a wrongful death action filed before a plaintiff has been appointed personal representative is a nullity which cannot be corrected via subsequent amendment. *Id.* at *3, *8. "Because the Federal Rules provide a solution to the question in dispute, there is no need to determine if the plaintiff's ability to 'relate back' falls under *Erie*."

*Id.* Pursuant to *Hanna*, federal law controlled.

The court then had to determine whether Rule 17(a)(3) exceeded its authority under the Rules Enabling Act by abridging, enlarging, or modifying a substantive right. *Id.* The court found Rule 17 "in line with the terms of the Rules Enabling Act and relevant constitutional considerations." *Id.* at *12. Nor did the rule abridge, enlarge, or modify a substantive right under Alabama's wrongful death statute. *Id.* The focus was on the nature of the federal rule, rather than the nature of the affected state law. *Id.* "Relation back" under Rule 17 is typically seen as procedural rather than substantive. *Id.* The appointment of a personal representative speaks to how a wrongful death claim may be brought, not what elements a wrongful death claim includes. *Id.* at *13. It only changes the "manner and means" by which the right is enforced and would not alter the rules of decision by which wrongful death claims are adjudicated. *Id.* Thus, Rule 17(a)(3) did not abridge, enlarge, or modify substantive rights under Alabama law and did not violate the Rules Enabling Act. *Id.* at *14. The new complaint properly alleging plaintiff's capacity as personal representative of the estate related back to the commencement of the action. *Id.* at *15; *see also Brohan ex rel. Brohan v. Volkswagen Mfg. Corp. of Am.*, 97 F.R.D. 46, 49 (E.D.N.Y. 1983) (holding that Rule 17(a)(3) applied to substitution of executrix of estate by its "plain meaning" and directly conflicted with the New York rule, so that the federal rule controlled under *Hanna* without the need to refer to *Erie*); *cf. Davis v. Piper Aircraft Corp.*, 615 F.2d 606, 610-11 (4th Cir. 1980) (where Federal Rule of Civil Procedure 15(c) directly conflicted with North Carolina rule regarding relation back of amendment to assert capacity of administrator, *Hanna* commanded application of federal rule).

Similarly, in *Estate of Rowell*, plaintiff brought federal and state-law claims related to his decedent's death. 2012 WL 2479626, at *1. At the time he filed the initial complaint,

plaintiff had not been appointed personal representative of the decedent's estate in Alabama. *Id.* at *2. Such an appointment occurred four days later. *Id.* Nine days after the appointment, plaintiff filed an amended complaint. *Id.* Defendants moved to dismiss the amended complaint on the ground that plaintiff lacked standing when he filed the original complaint. *Id.* at *4. Plaintiff responded that he cured the standing defect by filing the amended complaint asserting essentially the same claims after receiving the letters of administration for the estate in Alabama. *Id.*

Pursuant to Alabama's wrongful death statute, only a duly-appointed personal representative has standing to sue, and plaintiff had not been appointed personal representative at the time he filed the action. *Id.* at *2. Moreover, under Alabama law, "if a plaintiff lacked standing when the complaint was first filed, subsequent amendments cannot create standing." *Id.* at *4. The Alabama Supreme Court had held that "when a plaintiff files a wrongful death suit without first being duly appointed as the personal representative of the decedent's estate, the suit is 'a nullity,' and subsequent amendments therefore have no effect." *Id.* Thus, the magistrate judge found that plaintiff lacked standing when the complaint was filed and the court did not have subject matter jurisdiction. *Id.* at *3.

The district court, however, rejected the magistrate judge's recommendation in light of "a narrow exception to the usual standing rules." *Id.* at *5. Because Alabama's interpretation of its state rules was inconsistent with the "plain language" of Federal Rule of Civil Procedure 17(a), the federal rule controlled. *Id.* at *5-6. Such an interpretation was "consistent with: (1) Supreme Court precedent; (2) the Advisory Committee Notes to the 1966 amendments to Rule 17; (3) the commentary in trusted treatises; and (4) the decisions of most other courts that

had considered the issue."[3] *Id.* at \*6 & nn.18-21. Thus, as the Eleventh Circuit had held,

> Rule 17(a) sets forth a rule of procedure that is to be applied in the federal courts. The Rule provides that when an action is brought by someone other than the real party in interest, the suit need not be dismissed if the real party in interest subsequently joins or ratifies the action. The Rule further provides that such subsequent joinder or ratification by the real party in interest relates back to the time the suit was first filed. . . . *Most importantly, the Rule is to be applied even where the courts of the forum state have rejected the "relation back" doctrine.*

*Id.* at \*6 (quoting *Hess v. Eddy*, 689 F.2d 977, 981 (11th Cir. 1982)) (emphasis added).

The applicable precedent dictated that even though plaintiff had not been appointed administrator of the estate on the date the original complaint was filed, he was duly appointed soon thereafter and substituted as the real party in interest in the case. *Id.* Accordingly, even though he did not have standing when the original complaint was filed, the amendment to substitute plaintiff, as the administrator of the estate, as the real party in interest related back to the original filing. *Id.* "This holding applies even though the same result would not be permissible under Alabama law, and it represents an exception to the general rule that standing must be determined as of the date the case is filed." *Id.* The court therefore denied defendants' motion to dismiss. *Id.*

The same result obtained in *Fletcher*, where defendants, as in *Estate of Rowell*, argued that because the wrongful death action had initially been brought in the name of a "non-entity," the case was a "nullity" that could not subsequently be cured by amendment. 2017 WL 690533, at \*4. The court found that defendants' reliance on Connecticut state case law for this assertion was "misplaced." *Id.* at \*5. "*[F]ederal*, not state, law controls whether to allow

---

[3] Indeed, the very Supreme Court case which prompted the adoption of Rule 17(a)(3) concerned the application of federal law to permit an amendment to substitute for an invalidly-appointed estate administrator, notwithstanding state law that would have prohibited the amendment. *See Levinson v. Deupree*, 345 U.S. 648, 652 (1953).

substitution under Rule 17(a)(3)." *Id.* (emphasis in original). According to the court,

> [T]here no longer is any doubt that a federal court may apply the substitution and
> relation back provision of Rule 17(a)(3) in a diversity of citizenship case even
> though the law of the state in which the court is sitting would not allow relief.

*Id.* (quoting 6A Charles Alan Wright et al., *Federal Practice & Procedure* § 1555 (3d ed. 2005)). Furthermore, "[f]ederal law, in the form of Rule 17(a)(3), is 'inclined to be lenient when an honest mistake has been made in choosing the party in whose name the action is to be filed,'" even in cases that state law would treat as a "nullity." *Id.* (quoting Fed R. Civ. P. 17 Advisory Committee Note (1966)).

Here, as established in *Tylenol*, *Estate of Rowell*, and *Fletcher*, Rule 17(a) is sufficiently broad to cover the substitution of Plaintiff, as the administrator of Ms. Ayers' Estate, as the real party in interest. To the extent Virginia's interpretation of its rules directly conflicts with the federal rule, Rule 17(a) controls under *Hanna*. Indeed, this case is strikingly similar to *Estate of Rowell*. As in *Estate of Rowell*, Plaintiff had not yet qualified as administrator of the Estate in Virginia at the time he filed his initial Complaint. However, Plaintiff qualified shortly thereafter and quickly filed an Amended Complaint to reflect this. Like the Alabama case law cited in *Estate of Rowell*, in Virginia only an administrator qualified in Virginia has standing to bring a wrongful death action. If a plaintiff has not been so appointed at the time he or she files suit, he or she lacks standing and the suit is a "nullity" that cannot be cured by subsequent amendment. *See Harmon v. Sadjadi*, 273 Va. 184, 193 (2007). However, as set forth in *Estate of Rowell*, Federal Rule of Civil Procedure 17(a) controls here and allows the substitution, *even though the same result would not be permissible under Virginia law*. Thus, the Virginia state court cases cited by the Hall Defendants in their Brief, while correct recitations of Virginia law, are inapposite. Rule 17(a) controls and the question of substitution to correct Plaintiff's initial

lack of capacity must be decided under federal law, notwithstanding any Virginia state cases prohibiting such substitution. *See Davis*, 615 F.2d at 613 ("The fact that relation back would not be permitted in state court is not a valid consideration. So to treat it would in effect undercut the basic choice of law decision already made in favor of federal law.").

**B.    Even If There Is No Direct Conflict Between the Federal Rule and the Virginia Rule, the Federal Rule Still Controls Under *Erie*.**

If the Court concludes that there is no federal rule on point, it would proceed with the traditional *Erie* analysis. *Tylenol*, 2015 WL 7075812, at *5. Pursuant to the *Erie* Doctrine, a federal court should apply state substantive law and federal procedural law when reviewing state-law claims in a diversity action. *Kerr v. Marshall Univ. Bd. of Governors*, 824 F.3d 62, 74 (4th Cir. 2016). Analogous case law from this Court indicates that issues of substitution and amendment are matters of procedure governed by federal law under the *Erie* analysis.

In *Cook v. John Hancock Life Insurance Co. (U.S.A.)*, No. 7:12-cv-00455, 2015 WL 178108 (W.D. Va. Jan. 14, 2015), suit was originally filed by a trust in its own name alleging damages incurred as a result of the misconduct of plaintiffs' investment advisor. *Id.* at *1. Defendants moved to dismiss, contending that the trust lacked standing to bring any claims. *Id.* at *5. In response, plaintiffs sought leave to amend the complaint to name the trustee of the trust as the proper party. *Id.* Citing Federal Rule of Civil Procedure 17(b), the court determined that whether the trust had capacity to sue had to be determined under Virginia law. *Id.* Under Virginia law, a trust can only sue through its trustee and not in its own name. *Id.* However, the court refused to dismiss the action. *Id.* While Virginia law governed the capacity of the trust to sue, "'substitution of a party appears to be a matter of procedure that should be governed by federal law.'" *Id.* at *6 (citing *Erie*). Likewise, the amendment of pleadings is a matter of

Case 4:18-cv-00020-JLK-RSB   Document 75   Filed 11/15/18   Page 15 of 26   Pageid#: 461

procedure governed by federal law. *Id.* Accordingly, federal law applied and Rule 17(a)(3) permitted amendment of the complaint to substitute the trustee as the proper party. *Id.*

As in *Cook*, this case involves issues of substitution and amendment to correct a party's initial lack of capacity. *Cook* demonstrates that such issues are matters of procedure and should be governed by federal rather than state law. Thus, even if the Court applies the *Erie* analysis, the result still warrants the application of federal law to the issues raised by the Hall Defendants' Motion.

### III. Pursuant to Federal Law, the Hall Defendants Waived Their Challenge to Plaintiff's Lack of Capacity By Failing to Make a Specific Denial Their Answers.

The Hall Defendants failed to raise the issue of capacity in their Answers. Pursuant to the Federal Rules of Civil Procedure and applicable case law, they thus waived their ability to now challenge Plaintiff's capacity and their Motion must be denied.

The Hall Defendants correctly state that pursuant to Rule 12(h)(3), lack of subject matter jurisdiction may be raised at any time. (Hall Defs.' Br. at 3.) Because standing concerns a court's subject matter jurisdiction, it may be raised at any time. *Fletcher*, 2017 WL 690533, at *3; *Estate of Rowell*, 2012 WL 2479626, at *3; *Hill*, 87 F. Supp. 2d at 1121. However, as established above, the present Motion concerns capacity, not standing. Capacity to sue is *not* jurisdictional. *Hill*, 87 F. Supp. 2d at 1122; *see also Summers v. Interstate Tractor & Equip. Co.*, 466 F.2d 42, 50 (9th Cir. 1972) ("The question of a litigant's capacity or right to sue or be sued generally does not affect the subject matter jurisdiction of the district court."); *Hoskinson*, 2013 WL 4028804, at *5 ("While lack of standing is a component of subject matter jurisdiction and events occurring after the filing of a complaint cannot retroactively create jurisdiction, a party's lack of *capacity* to sue does not implicate subject matter jurisdiction.") (emphasis in

16

original). Thus, unlike standing, which can be raised at any time, failure to timely raise a lack of capacity defense operates as a waiver. *Bachman*, 894 F.2d at 1236; *Fletcher*, 2017 WL 690533, at *4 ("'Lack of capacity is generally not considered jurisdictional and is therefore waived if not specifically raised.'") (quoting *E.R. Squibb & Sons, Inc. v. Accident & Cas. Ins. Co.*, 160 F.3d 925, 936 (2d Cir. 1998)).

Specifically, in order to raise the issues of capacity to sue or be sued or authority to sue or be sued in a representative capacity, a party must make "a specific denial, which must state any supporting facts that are peculiarly within the party's knowledge." Fed. R. Civ. P. 9(a). "The specific denial 'must be made in the responsive pleading or by motion before pleading.'" *Slagowski*, 2014 WL 4887807, at *3 (citation omitted).

This Court has found a waiver in similar circumstances under a prior version of Rule 9(a). In *NAACP Labor Committee of Front Royal, Virginia v. Laborers' International Union of North America*, 902 F. Supp. 688 (W.D. Va. 1993) (Kiser, J.), *aff'd*, 1995 WL 578084 (4th Cir. 1995), defendants sought to challenge a widow's capacity to sue on behalf of her deceased husband. Plaintiffs argued that defendants had waived their right to challenge the widow's capacity to sue by not raising the issue by "specific negative averment" in their pleadings. *Id.* at 699. The Court noted that

> While neither the Fourth Circuit nor any federal district court within the Fourth Circuit has relied on Rule 9(a) to hold a party to have waived the right to raise the issue of capacity, numerous other courts in various circuits have found waiver where the issue was not raised by pleading or motion before pleading.

*Id.* Accordingly, the Court held that defendants had waived their right to challenge the widow's capacity to sue. *Id.*; *see also Slagowski*, 2014 WL 4887807, at *3-4 (treating issue as matter of

prudential standing and finding waiver based on defendants' failure to specifically deny plaintiffs' capacity or authority to sue on estate's behalf in their answer).

In this case, Hall filed his Responsive Pleading on June 11, 2018. (Doc. 29.) Mr. Hall filed his Answer on July 12, 2018. (Doc. 48.) In neither responsive pleading did either Defendant make a specific denial of Plaintiff's capacity or authority to sue. Therefore, the Hall Defendants have waived their challenge to Plaintiff's lack of capacity and their Motion must be denied.

## IV. Federal Courts, Including This Court, Routinely Permit Amendment of Pleadings to Cure a Lack of Capacity.

Even if the Court elects to consider the merits of the Hall Defendants' Motion, the Motion must still be denied. Numerous federal courts have permitted amendment of pleadings to cure a lack of capacity. These decisions include an opinion of this Court in circumstances nearly identical to those prevailing here, an opinion which the Hall Defendants neglected to cite in their Brief.

*Schieszler v. Ferrum College*, 236 F. Supp. 2d 602 (W.D. Va. 2002) (Kiser, J.), involved a wrongful death suit following the suicide of decedent while attending college in Virginia. *Id.* at 605. Decedent's aunt qualified as the personal representative of his estate in Illinois and then filed the wrongful death action in this Court. *Id.* Defendants moved to dismiss, arguing that plaintiff lacked capacity to sue under Rule 17(b) because she had failed to obtain appointment in Virginia prior to filing suit. *Id.* at 613.

Noting that the ability to sue or be sued in a representative capacity is determined by the law of the state where the court sits under Rule 17(b), the Court examined whether plaintiff had capacity to sue under Virginia law. *Id.* Pursuant to Virginia law, a foreign administrator who

has not qualified in Virginia lacks authority to institute an action on behalf of the estate in either Virginia state or federal court. *Id.* Plaintiff had not qualified as administratrix of decedent's estate in Virginia at the time she filed the action and, therefore, lacked authority under Virginia law to commence the suit. *Id.* However, plaintiff did so qualify within days after oral argument on defendants' motion to dismiss. *Id.* In light of this, and "[b]ecause justice requires that the plaintiff be allowed to assert her capacity as administratrix of [decedent's] estate," the Court granted plaintiff leave to file a second amended complaint. *Id.* Indeed, as this Court recognized, "[t]he federal courts have freely upheld the filing of an amended complaint under these circumstances." *Id.* at 614 (citing cases). "Moreover, the defendants will not suffer any hardship by the addition of the plaintiff as administratrix." *Id.* Thus, the Court gave plaintiff ten days to file a second amended complaint asserting her capacity as administratrix of decedent's estate. *Id.*

As in *Schieszler*, Plaintiff had qualified as administrator in a foreign jurisdiction (North Carolina) at the time he filed the original Complaint, but had not yet qualified as administrator in Virginia. Thus, Plaintiff admittedly lacked authority to commence this action at the time the Complaint was filed. The only difference between this case and *Schieszler* is that, unlike the plaintiff in *Schieszler*, Plaintiff here almost immediately recognized the capacity issue, qualified as administrator of Ms. Ayers' Estate in Virginia, and filed an Amended Complaint as a matter of course under Rule 15(a)(1) to reflect his capacity, whereas the plaintiff in *Schieszler* had to rely on the Court's discretion in granting leave to amend. Still, the Court granted such leave after finding that "federal courts have freely upheld the filing of an amended complaint under these circumstances." 236 F. Supp. 2d at 614. The Hall Defendants inexplicably fail to cite *Schieszler* at all in their Motion or Brief (even after Plaintiff analyzed the case thoroughly in his

Response to Brandt's Second Motion (Doc. 61)). Yet *Schieszler* is directly on point and dictates that Plaintiff properly amended his Complaint as a matter of course once he had qualified as administrator of the Estate in Virginia in order to cure his initial lack of capacity.[4] The Motion must be denied.

*Schieszler* is hardly an outlier on this issue. Indeed, as *Schieszler* itself recognizes, numerous federal courts have permitted amendment to cure a lack of capacity under similar circumstances. *See Tylenol*, 2015 WL 7075812, at *7 ("Courts have routinely used Rule 17(a)(3) to allow a party bringing a wrongful death claim in her individual capacity to later be substituted by herself in her official capacity as personal administrator."); *Corvello v. New England Gas Co.*, No. 05-0221 S, 2011 WL 3742005, at *4 (D.R.I. Aug. 23, 2011) ("There is a legion of cases in which federal courts have permitted amendment or relation-back of pleadings or substitution of parties without perceiving such technical fixes to offend the Constitution."). For instance, in *Yien-Koo King v. Wang*, No. 14 Civ. 7694 (JFK), 2018 WL 1478044 (S.D.N.Y. Mar. 26, 2018), plaintiff, who had not yet qualified as executrix of her decedent's estate at the time she filed her complaint, was subsequently appointed executrix. *Id.* at *4. Based on the numerous cases allowing substitution to replace invalid estate administrators and the policies underlying Rule 17(a), the court found that "[a]llowing [plaintiff] to proceed with claims brought on behalf of the estate is essentially a technical change that in no way alters the factual

---

[4] *Yates v. Turcotte*, No. 7:14-CV-00144, 2014 WL 7045619 (W.D. Va. Dec. 12, 2014), heavily relied upon by the Hall Defendants in their Brief, cites *Schieszler* only for the proposition that "[a] wrongful death suit filed by a foreign administrator who has not qualified in Virginia is thus 'a legal nullity.'" *Id.* at *2. Yet *Schieszler* never uses the "legal nullity" phrase. Moreover, *Yates* fails to recognize that *Schieszler* correctly analyzed the issue as one of capacity rather than standing and, consistent with numerous other federal courts, freely allowed plaintiff to amend her complaint to cure her initial lack of capacity. Thus, *Yates* is of limited persuasive value.

allegations in the amended complaint." *Id.* at *6. Such a substitution served the interests of justice. *Id.* Defendants were not prejudiced by the substitution, "'as they had clear notice of the claims against them in the original complaint.'" *Id.* Finally, plaintiff had made her request within a reasonable time. *Id.* Accordingly, the court allowed the substitution.

Similarly, in *Fletcher*, plaintiffs originally filed suit in the name of decedent's estate, but subsequently filed an amended complaint to assert their capacity as co-administrators. 2017 WL 690533, at *1. Defendants moved to dismiss, arguing that the original lack of capacity could not be cured by the subsequent substitution. *Id.* at *2. The court disagreed, finding it had "the power to allow substitution when a mistake has been made in naming the plaintiff, including . . . lack of capacity . . . ." *Id.* at *4. Indeed, "'[a] Rule 17(a) substitution of plaintiffs should be liberally allowed when the change is merely formal and in no way alters the original complaint's factual allegations as to the events or participants.'" *Id.* at *6. In so deciding, the court had to consider whether the plaintiffs acted in bad faith and whether substitution would prejudice the defendants. *Id.*

The court held that substituting estate administrators "is just the sort of formal, technical fix contemplated by the Federal Rules." *Id.* There was no indication of bad faith or prejudice to defendants, since defendants had clear notice of the charges against them in the original complaint. *Id.* On the other hand, "[p]rohibiting amendment and substitution in this case would elevate form over substance and would be contrary to the spirit of the Federal Rules of Civil Procedure." *Id.* Thus, "substitution is clearly warranted under Rule 17(a)(3)." *Id.*; *see also Slagowski*, 2014 WL 4887807, at *5 (allowing substitution of personal representative due to lack of prejudice to defendants, who had defended action for over two years without challenging plaintiff's status); *Hoskinson*, 2013 WL 4028804, at *6 (permitting amendment

where plaintiff showed she had subsequently qualified as special administrator of decedent's estate following filing of original complaint); *Brohan*, 97 F.R.D. at 49-50 (granting motion for leave to amend to cure lack of capacity where plaintiff moved to cure mistake within reasonable time, no one had been misled as to the nature of the claims or issues at stake, the parties were on notice of the relevant considerations from the time they were first served, and it would be unjust not to allow plaintiff to correct the situation).[5]

In their Brief, the Hall Defendants rely heavily on the argument that because Plaintiff had not yet qualified as administrator of the Estate in Virginia at the time the initial Complaint was filed, "this action is a legal nullity" and any attempt to amend the Complaint "is also a nullity." (Hall Defs.' Br. at 4.) To the contrary, federal courts have rejected similar "nullity" arguments in the context of substitution under Rule 17(a)(3). In *Esposito v. United States*, 368 F.3d 1271 (10th Cir. 2004), defendant made just such an argument, contending that substitution of the estate administrator was unavailable because the initial attempt to bring the case was a nullity that could not be cured by substitution. *Id.* at 1277. However, the Federal Rules of Civil Procedure "permit[ ] substitution notwithstanding [plaintiff's] lack of capacity at the time the suit was filed." *Id.* Indeed,

> As the district court pointed out, nothing in Rule 17(a) requires that the original plaintiff have capacity to sue. The fact is, Rule 17(a) does more than merely provide a relation back principle. It provides that substitution "shall have the *same effect as if* the action had been commenced in the name of the real party in interest." Fed.R.Civ.P. 17(a) (emphasis added). Rule 17(a) is designed to prevent forfeitures, and as such must be given broad application.

---

[5] Even some cases erroneously interpreting the issue as one involving standing have allowed a plaintiff to amend his or her complaint where plaintiff qualifies as estate administrator after the filing of the complaint. *See Smith v. Jones*, No. 1:13 CV 744, 2014 WL 12591694, at *5 (N.D. Ohio Sept. 24, 2014); *Wernicke v. Cannon*, No. 8:13-cv-148-RMG, 2014 WL 908448, at *2 (D.S.C. Mar. 7, 2014).

*Id.* at 1277-78. Therefore, plaintiff's lack of capacity at the time suit was filed "does not prevent the substitution from relating back to the date suit was filed under Rule 17(a)." *Id.* at 1278; *see also Corvello*, 2011 WL 3742005, at *3 (rejecting "metaphysical" argument that "because [plaintiff] lacks capacity to sue, by the same token, it also lacks capacity to amend its complaint" as "counter to the letter of the Federal Rules, the spirit of notice pleading, and decades of federal jurisprudence"); *Estwick v. U.S.Air Shuttle*, 950 F. Supp. 493, 499 (E.D.N.Y. 1996) (rejecting argument that initial lack of capacity cannot be cured by subsequent appointment as administratrix as lacking support in federal case law and "contrary to the liberal policy underlying the Federal Rules of Civil Procedure").

As in the above cases, Plaintiff should be permitted to substitute the real party in interest under Rule 17(a)(3) in order to cure the initial lack of capacity. Plaintiff acted within a reasonable time by filing his Amended Complaint as a matter of course within the timeframe established by Rule 15(a)(1). Nor is there any bad faith or prejudice to Hall. Hall had clear notice of the claims against him in the original Complaint. Thus, Plaintiff's filing of his Amended Complaint as a matter of course properly substituted the real party in interest under Rule 17(a)(3). Pursuant to that Rule, the substitution has "the same effect as if the action had been commenced in the name of the original party in interest." Fed. R. Civ. P. 17(a)(3); *Esposito*, 368 F.3d at 1278; *Hoskinson*, 2013 WL 4028804, at *8 ("[T]he action 'proceeds as if it had been originally commenced by the real party in interest.'"). Plaintiff's initial lack of capacity has been cured and the Hall Defendants' Motion must be denied.

<u>Conclusion</u>

For the foregoing reasons, the Hall Defendants' Motion to Dismiss the Amended Complaint Pursuant to Rule 12(b)(1) should be denied.

23

This the 15th day of November, 2018.

s/ Richard J. Keshian
Richard J. Keshian (N.C. Bar No. 10681) (*admitted pro hac vice*)
Stephen R. Berlin (N.C. Bar No. 12317) (*admitted pro hac vice*)
KILPATRICK TOWNSEND & STOCKTON LLP
1001 West Fourth Street
Winston-Salem, North Carolina 27101
Telephone: (336) 607-7300
Facsimile: (336) 607-7500
Email: rkeshian@kilpatricktownsend.com
        sberlin@kilpatricktownsend.com

s/ Glenn L. Berger
Glenn L. Berger (VA Bar No. 16913)
Berger & Thornhill
3326 Lynch Mill Road
P.O. Box 298
Altavista, VA 24517-0298
Telephone: (434) 369-2000
Facsimile: (434) 369-7927
Email: glennberger@outlook.com

*Counsel for Plaintiff, Christopher Mark Ayers,*
*Administrator of the Estate of Gabrielle Brooke Ayers*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 15, 2018, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:

Guy M. Harbert, III, Esq.
Douglas P. Barber, Jr., Esq.
Gentry Locke
10 Franklin Road, SE, Suite 900
P.O. Box 40013
Roanoke, VA 40013
Email:  harbert@gentrylocke.com
            barber@gentrylocke.com
*Counsel for Defendants Drewry Woodson Hall,*
*Richard Wayne Hall and Sallie Woodson Hall*

William M. Stanley, Esq.
The Stanley Law Group
13508 Booker T. Washington Hwy.
Moneta, VA 24121
Email:  bstanley@vastanleylawgroup.com
*Counsel for Defendants Drewry Woodson Hall*
*and Richard Wayne Hall*

Wm. Tyler Shands, Esq.
Carter T. Keeney, Esq.
Carter & Shands, P.C.
9030 Stony Point Parkway, Suite 530
Richmond, VA 23235
Email:  wtshands@carterandshands.com
            ckeeney@carterandshands.com
*Counsel for Defendant William Rentz Brandt*

s/ Richard J. Keshian
Richard J. Keshian (N.C. Bar #10681) (admitted pro hac vice)
Stephen R. Berlin (N.C. Bar #12317) (admitted pro hac vice)
KILPATRICK TOWNSEND & STOCKTON LLP
1001 West Fourth Street
Winston-Salem, North Carolina 27101
Telephone:  (336) 607-7300
Facsimile:  (336) 607-7500
Email:  rkeshian@kilpatricktownsend.com
            sberlin@kilpatricktownsend.com

s/ Glenn L. Berger
Glenn L. Berger (VA Bar No. 16913)
Berger & Thornhill
3326 Lynch Mill Road
P.O. Box 298
Altavista, VA 24517-0298
Telephone:  (434) 369-2000
Facsimile:  (434) 369-7927
Email:  GlennBerger@outlook.com

*Counsel for Plaintiff, Christopher Mark Ayers,*
*Administrator of the Estate of Gabrielle Brooke Ayers*